UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal No. 3:21-cr-00021-GFVT-EBA |
| V. | ) ) ) | **MEMORANDUM OPINION** |
| EDWARD LEONIDAS LEWIS, | ) ) | **&** |
| Defendant. | ) ) ) | **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Report and Recommendation [R. 34] of Magistrate Judge Edward B. Atkins that addresses the Motion to Suppress filed by Defendant Edward Lewis and the Government's response in opposition. [R. 24; R. 26.] After conducting a suppression evidentiary hearing, Judge Atkins issued a written recommendation of denial. [R. 32; R. 34.] Mr. Lewis subsequently objected to Judge Atkins's recommendation and this matter is now ripe for review. [R. 36.] Upon review, Judge Atkins's recommendation will not be adopted, but Mr. Lewis's objections will be **OVERRULED AS MOOT IN PART** and **SUSTAINED IN PART** for the reasons articulated below.

**I**

Mr. Lewis faces a slew of charges related to the production, receipt, and possession of child pornography. [R. 1.] Sometime prior to February 25, 2021, a foreign law enforcement agency captured an IP address allegedly engaging with online child sexual exploitation material and provided this information to the Department of Homeland Security Investigations. [R. 35 at 11.] A subsequent subpoena of the IP address provided two separate addresses registered to Defendant Edward Lewis. *Id.* at 12. On February 25, a Special Agent with HIS requested

Kentucky State Police Detective Anthony Gatson to assist him with a "knock-and-talk" investigation into Mr. Lewis. [R. 34 at 1.] At the first address, a young woman told the officers that Mr. Lewis did not live at that location but did live at the second address. *Id.* Upon arrival at the second address, Mr. Lewis answered the door, the two officers identified themselves, asked to speak with him about their investigation into online child sexual exploitation activity, and asked if "he would mind if someone came over and looked at […] his devices." *Id.* at 13. Mr. Lewis agreed to a search, so Detective Gatson called a forensic examiner to assist in reviewing data on Mr. Lewis's electronic devices. *Id.* at 13-14. When the examiner arrived, Detective Gatson presented Mr. Lewis a consensual search form, which he signed. [R. 35; Gov. Exh. C.] According to the form, it was executed at 12:40 P.M. on February 25, 2021. The validity of the form is uncontested.

Once the forensic examiner arrived, he generated a report of visited websites, cache history, and viewed files from Mr. Lewis's computer. *Id.* at 21-22. Though no files from the report were opened by the officers, the forensic examiner provided Detective Gatson the results of the report at its completion. *Id.* at 21-22. The officers also cursorily reviewed Mr. Lewis's Galaxy Note 9 cell phone, where they found video thumbnails of "children in the bathroom taking a bath […] and naked in a bedroom," later determined to be the children of Mr. Lewis's cousin. *Id.* at 23-24. Like the computer files, however, the officers did not open the videos linked to the thumbnails. *Id.* After conducting the initial search, Detective Gatson exited Mr. Lewis's home and contacted an Assistant Commonwealth Attorney, who told him "[t]o arrest Mr. Lewis and to obtain a search warrant for the residence." *Id.* at 25. Detective Gatson then asked Mr. Lewis to step outside, read him his statement of rights, and "told [him] that he was going to placed under arrest." *Id.* at 26. Mr. Lewis then invoked his *Miranda* rights and was

soon taken away by a trooper. *Id.* at 26, 55. Detective Gatson next "typed a search warrant," and "took that search warrant to the Franklin County district judge's office," where the judge approved a search of Mr. Lewis's house for electronic items that could have evidence of child sexual exploitation on them.[1] *Id.* at 29. Mr. Lewis was subsequently indicted on multiple charges related to the material found on his laptop, cell phone, and thumb drive. [R. 1.]

In his Motion to Suppress, Mr. Lewis primarily argued that Detective Gatson's affidavit in support of his search warrant request was constitutionally insufficient and that, consequently, the evidence obtained from the warrant must be suppressed. [R. 24-1.] Moreover, Mr. Lewis requested a *Franks* hearing to determine whether a material omission of fact impacted the sufficiency of the warrant affidavit. [R. 24-1 at 10-14.] But, upon review and after having held an evidentiary hearing, Magistrate Judge Atkins concluded that Mr. Lewis's initial grant of consent to search his laptop and cell phone also permitted the subsequent seizure of those items. [R. 34 at 12-13.] Consequently, Judge Atkins declined to analyze the sufficiency of Detective Gatson's warrant affidavit and did not conduct a *Franks* hearing. *Id.* at 13. Now, Mr. Lewis objects to Judge Atkins's recommendation, while the Government requests its adoption. [R. 36; R. 39.] Mr. Lewis's objection triggers this Court's obligation to conduct a *de novo* review of the Motion to Suppress under 28 U.S.C. § 636(b)(1)(c). Having satisfied this duty, and for the reasons provided below, the Magistrate Judge's recommended disposition will not be adopted, Mr. Lewis's objections [R. 36] will be **OVERRULED AS MOOT IN PART** and **SUSTAINED IN PART**, and Mr. Lewis's Motion to Suppress [R. 24-1] will be **DENIED.**

---

[1] The only item found to have evidence of child sexual exploitation on it aside from Mr. Lewis's laptop and cell phone was a thumb drive, listed as item B-3 on the police search warrant return document. [R. 35 at 32; Def. Exh. 1.]

3

## II

In his Motion to Suppress, Mr. Lewis contends that the affidavit Detective Gatson filed in support of his request for a warrant was "facially deficient and lack[ed] probable cause." [R. 24-1 at 4-9.] And because the warrant affidavit was so insufficient, Mr. Lewis contends that the authorizing judge simply acted as a "rubber stamp," thereby precluding an application of the good faith exception to the exclusionary rule. *Id.* at 9-10. Consequently, Mr. Lewis requests the suppression of any evidence derived from the search warrant. *Id.* Magistrate Judge Atkins thoughtfully considered Mr. Lewis's arguments but determined that his Motion should be denied because Mr. Lewis's consent to search permitted the officers to seize his electronics. [R. 34.]

In reaching this conclusion, Judge Atkins first analyzed the validity and scope of Mr. Lewis's consent. [R. 34 at 6-12.] Regarding validity, Judge Atkins found that "the United States met its burden to demonstrate that Mr. Lewis's consent was voluntary, intelligent, and unequivocally given." *Id.* at 8 (citing *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009) (quoting *United States v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999)). Having determined Mr. Lewis's consent was voluntary, Judge Atkins next concluded that the scope of Mr. Lewis's initial consent to search also permitted seizure of his property, which negated the need for a search warrant. *Id.* at 9-10. In support of this conclusion, Judge Atkins indicated that "the record currently reflects that Mr. Lewis was well-aware of the object of the investigation: child exploitation," and found that the consent form that Mr. Lewis signed was not limited to a cursory search but permitted a "complete search" of his electronics. [R. 34 at 10-11.] And, in further support, Judge Atkins relied on *United States v. Stapleton*, in which seizure of evidence was found constitutional even though the consent form that a defendant signed only explicitly authorized a search. [R. 34 at 9 (citing 2013 U.S. Dist. LEXIS 106667 at *24 (E.D. Ky. July 30,

2013)).]. Finally, Judge Atkins analyzed whether Mr. Lewis had ever withdrawn his consent to search, found no evidence of withdrawal, and concluded that the search and seizure of his electronics was constitutional, consensual, and required no warrant. [*See* R. 34 at 10-13.] Accordingly, Judge Atkins declined to analyze the sufficiency of Detective Gatson's warrant affidavit, whether Mr. Lewis was entitled to a *Franks* hearing, or whether the good faith exception to the exclusionary rule applied in this matter. *See id.*

Mr. Lewis timely objected to the vast majority of the Recommended Disposition. [R. 36.] Mr. Lewis's first three objections relate to Judge Atkins's conclusions about the scope of his consent. First, Mr. Lewis contends that he did not consent to a "complete search" of his electronics as Judge Atkins found, but only consented to a cursory "preview" search. *Id.* at 1-10. Second, Mr. Lewis argues that, even though he initially consented to a search, he "revoked his consent" or was "alternatively […] prevented […] from revoking his consent" by having been removed from the scene. *Id.* at 10-13. And third, Mr. Lewis contends that he "never consented to the second search of his devices." *Id.* at 13-15. Mr. Lewis finally contends that, regardless of his consent to search, he "never consented to the seizure of his property." *Id.* at 15-19. In opposition, the Government argues that Mr. Lewis's consent to search was broad, was not revoked, and that forfeiture laws permitted the seizure of Mr. Lewis's electronics, regardless of whether his consent permitted seizure. [*See* R. 39 at 1-10 (citing 18 U.S.C. § 2253).]

### A

Upon review, it is apparent that a *de novo* analysis of whether Mr. Lewis consented to seizure may moot his remaining objections.[2] Accordingly, the Court will analyze Mr. Lewis's

---

[2] This is because, if the Court concludes that Mr. Lewis's items were unconstitutionally seized, the seizure of those items becomes the controlling act from which the suppression analysis would stem. Put more clearly, the Magistrate Judge concluded that Mr. Lewis's consent to search also permitted the seizure of his electronic items. As a result, Mr. Lewis's first three objections assume the Court will find

5

fourth objection first. In his Recommendation, the Magistrate Judge concluded that Mr. Lewis consented to both the search and seizure of his electronic devices, primarily relying on *Stapleton*. [*See* R. 34 at 9-11.] But in objection Mr. Lewis contends that *Stapleton* is factually distinct and that his consent to search did not permit seizure. [R. 15-19.] In support of adopting the Recommendation, the Government contends that forfeiture laws permit seizure regardless of consent. [*See* R. 39 at 1-10 (citing 18 U.S.C. § 2253).] Upon review, the Court agrees with Mr. Lewis that his consent to search did not permit the seizure of his electronic items.

The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.'" *United States v. Jacobsen*, 466 U.S. 109 (1984). Where "[a] search compromises the individual interest in privacy," "a seizure deprives the individual of dominion over his or her person or property." *Horton v. California*, 496 U.S. 128, 133 (1990). Accordingly, "[t]he right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures." *Id.* Accordingly, consent to search does not automatically permit seizure. *See United States v. Tatman*, 397 Fed. Appx. 152, 174 (6th Cir. 2010) ("Although we conclude that the federal agents did not exceed the scope of Tatman's consent in conducting the fourth search, this does not mean that the Fourth Amendment permitted the agents to seize the gun parts.").

In finding that Mr. Lewis's consent to search permitted seizure of his electronic devices, the Magistrate Judge primarily relied on *United States v. Stapleton*. In *Stapleton*, a defendant agreed to a search of his office and the copying of certain patient files. LEXIS 106667 at *22-*23. When the officers realized "there were too many files to copy," they asked the defendant if

---

that his consent to search permitted seizure, and therefore argues that consent was either withdrawn or limited. [*See* R. 36 at 1-15.] But if the Court were to disagree that Mr. Lewis had consented to seizure, the focus of the analysis would shift to whether a warrant permitted seizure, while the scope of his consent to search would no longer remain influential.

they could "box up the files," "copy them, and return them later." *Id* at *23, *25.  Because the defendant "never told the officers to stop boxing up the files," had voluntarily permitted the search, and had signed a consent to search form, the Court found he had "consented to both a search for and seizure of the patient files," but cautioned that the officers "probably" should have "prepared a consent form that referenced both a search and a seizure" to avoid later argument of a non-consensual seizure.  *See id.* at *25.  In reliance on this case, Judge Atkins concluded that because Mr. Lewis had signed a consent to search form, he had also consented to seizure.  [R, 34 at 10.]  But in opposition, Mr. Lewis contends that, unlike in *Stapleton*, the record in this matter does not show that he consented to seizure through conversation extrinsic to the consent form.  [R. 36 at 15-16.]  And regarding the Government's forfeiture argument, Mr. Lewis argues that the "statute expressly applies only in the event of conviction," which had not occurred at the point of seizure.  [R. 40 at 2-3.]

       Mr. Lewis is correct.  "The scope of consent to a search or seizure turns on the 'totality of all the surrounding circumstances,' not any one fact such as a consent form."  *Stapleton*, LEXIS 106667 at *24 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).  And here, unlike in *Stapleton*, the officers did not independently, verbally seek consent to seize Mr. Lewis's electronic items.  Instead, Detective Gatson requested a warrant to further search and seize the items.  [R. 35 at 26-27.]  Accordingly, *Stapleton* is factually distinct.  Moreover, Mr. Lewis is correct that 18 U.S.C. § 2253's forfeiture is not controlling because Section 2553 specifically controls the assets of "[a] person who is convicted of an offense […]."  Mr. Lewis, at the time of the search, had not been convicted of any crime.  Accordingly, Section 2553 is not controlling

7

and cannot be used as a basis to permit the warrantless seizure of items.[3]  Ultimately, there is no evidence in the record to support concluding that Mr. Lewis consented to the seizure of his items and the case law the Magistrate Judge relied on is factually distinct.  Consequently, Mr. Lewis's fourth objection is **SUSTAINED**.  But, having sustained Mr. Lewis's fourth objection, the Court **OVERRULES AS MOOT** his first three objections.  This is because Mr. Lewis's items were not seized by consent.  As a result, the Court need not analyze the scope of Mr. Lewis's initial consent to search because, regardless of its scope, the legality of the fruits of seizure requires an independent analysis focused on the validity of the warrant granted to Detective Gatson.

**B**

Having concluded that Mr. Lewis's consent to search permitted the seizure of his items, the Magistrate Judge declined to analyze whether Detective Gatson's warrant affidavit was constitutionally sufficient, whether the good faith exception to the exclusionary rule applied, and whether Mr. Lewis was entitled to a *Franks* hearing.  [R. 34 at 12-13.]  But this Court has now concluded that Mr. Lewis did not consent to the seizure of his items.  As a result, a *de novo* examination of each of these topics will follow.

**1**

In his Motion to Suppress, Mr. Lewis contends that Detective Gatson's "affidavit for the search warrant is facially deficient and lacks probable cause." [R. 24-1 at 4.]  Detective Gatson's affidavit, in relevant part, reads as follows:

> An HIS Investigation identified Edward L. Lewis […] as a person of interest. HIS SA Minnick requested assistance with interviewing Mr. Lewis. Mr. Lewis was located at his residence at 147 Meredith Avenue, Frankfort, KY 40601. Mr. Lewis gave consent to search his laptop and cell phone. During search it became apparent

---

[3] By citing 18 U.S.C. § 2253, it appears that the United States was attempting to argue that Mr. Lewis's electronic devices were subject to seizure and forfeiture because the illegality of content on those electronics had been seen in plain view by the officers.  But this argument was undeveloped and therefore unpersuasive.

> that Mr. Lewis used his laptop to view child sexual exploitation. The search based on consent was stopped and Mr. Lewis was arrested.

[Def. Exh. 1 at 4.] Alongside this description of events, Detective Gatson described his decades of experience in law enforcement, and generalities about the types of behavior collectors of child sexual exploitation material often exhibit. *See id.*

In support of suppression, Mr. Lewis contends that Detective Gatson's affidavit is constitutionally insufficient because it "contains no statements describing, let alone corroborating, the facts of HIS's purported investigation," fails to include details of "the results of the alleged consensual search," and includes "no statements explaining how it became apparent that Mr. Lewis viewed child exploitive material on the laptop searched," among other arguments. [R. 24-1 at 5-6.] Mr. Lewis further argues that "the Affidavit does not provide a sufficient nexus between the alleged crime and the places and things to be searched." *Id.* at 7. He specifically contests whether Detective Gatson's warrant affidavit was sufficient because, though it indicated "it became apparent that Mr. Lewis used his laptop to view images of child sexual exploitation," descriptions of these images were not included in the affidavit. *Id.* at 8-9. Consequently, Mr. Lewis contends that Detective Gatson's statement was "too vague, generalized, and insubstantial to establish probable cause," and that his warrant affidavit should therefore be deemed "bare-bones." [*Id.* at 8-9; R. 40 at 3.]

In opposition, the Government argues that "[p]robable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" [R. 26-1 at 5 (citing *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018).]. As such, the Government contends that the Court need only apply "[a] commonsense contextual reading" to Detective Gatson's affidavit in determining whether probable cause was present and that the affidavit did not require extensive detail as Mr. Lewis suggests. [*See* R. 26-1 at 5 (citing *United States v.*

9

*Castro*, 881 F.3d 961, 965 (6th Cir. 2019)).]. Accordingly, the Government asserts that "[c]ertainly, the Franklin District Judge could rely upon Detective Gatson's experience to know that what he saw was indicative of child exploitation." *Id.* at 6.

Mr. Lewis is correct that Detective Gatson's warrant affidavit fails to establish the existence of probable cause and should have been initially denied. "To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). And "[t]his conclusion depends on the totality of the circumstances." *Id.* Nonetheless, "a determination of probable cause [] must be bound by the four corners of the affidavit." *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005). While a review of a state magistrate's determination of probable cause is owed "great deference [unless] arbitrarily exercised," "such deference is not boundless." *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993); *United States v. Czuprynski*, 8 F.3d 1113, 1116 (6th Cir. 1993).

In his affidavit, Detective Gatson provided the state judge only one fact in support of the existence of probable cause: that a search of Mr. Lewis's laptop and cell phone had occurred. [*See* Def. Exh. 1 at 4.] And, in fact, Detective Gatson's decision to limit the number of facts he provided was deliberate. *Id.* at 3-4 ("I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause […]."). Accordingly, because analysis is bound to the four corners of the affidavit, the Court finds that the singular fact provided to the magistrate that a search had occurred could not have given rise to probable cause under a "totality of the circumstances" analysis. *Laughton*, 409 F.3d at 751; *Frazier*, 423 F.3d at 531. Though Detective Gatson listed

10

his experience, indicated that a search occurred, and posited that he believed it to be "apparent" that a crime had occurred, these statements alone were inadequate to have permitted the magistrate judge to find probable cause. *United States v. Ramirez*, 2016 U.S. Dist. LEXIS 49012 at *9 (W.D. Ky. March 4, 2016) ("the warrant requirement necessitates that a neutral magistrate judge, given the *facts and circumstances* known by law enforcement, make a determination of probable cause independent of law enforcement's conclusions.").

### 2

But although Detective Gatson's warrant affidavit was constitutionally insufficient, the good faith exception to the exclusionary rule precludes suppression. The good faith exception allows admission of unlawfully obtained evidence except in four circumstances:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Rice*, 478 F.3d 704, 712 (6th Cir. 2007). Further, the suppression of evidence in in accordance with the exclusionary rule "has been restricted to those areas where its remedial objectives are thought most efficaciously served." *United States v. Leon*, 468 U.S. 897, 908 (1984); *see also Herring v. United States*, 555 U.S. 135, 141 (2009). The exclusion of evidence must be appropriately applied to deter future misconduct by police, so "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. In fact,

in all the years since the "*Leon*'s good-faith exception, [the court has] never applied the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct." *Davis v. United States*, 564 U.S. 229, 240 (2011) (internal quotations omitted). Moreover, courts should give unlawful searches conducted pursuant to a warrant adequate weight, as "[a] grudging or negative attitude by reviewing courts toward warrants […] is inconsistent both with the desire to encourage use of the warrant process by police officers and with the recognition that once a warrant has been obtained, intrusion […] is less severe than otherwise may be the case." *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984). Despite the limits on exclusion that the good faith doctrine mandates, Mr. Lewis argues that all four exceptions are applicable, and that good faith should not be applied.

a

Mr. Lewis first contends that the warrant in this matter was issued on the basis of an affidavit that Detective Gatson knew, or was reckless in not knowing, contained false information or a material omission. [R. 40 at 4.] Mr. Lewis states "[t]he affidavit is misleading because no actual files were discovered during the preview search, only file names, and Det. Gatson testified that he did not view files or images during the preview search." *Id.* In further support, Mr. Lewis contends that "Det. Gatson also failed to provide information about the passage of time of over a year between the time of the 'knock-and-talk,' and an additional physical address […] associated with the subject IP address." *Id.* Furthermore, because these facts were not included in Detective Gatson's warrant affidavit, Mr. Lewis contends that he is entitled to a *Franks* hearing.[4] [R. 24-1 at 10-13.] In opposition, however, the Government

---

[4] Though the Magistrate Judge held a suppression evidentiary hearing in this matter, the hearing was not specifically deemed a *Franks* hearing. [*See* R. 35.] Nonetheless, a review of the transcript indicates that the hearing was open-ended and that counsel for Mr. Lewis, though given the general opportunity, failed to request the Magistrate Judge to shift his attention to the *Franks* issue. But to prevent any later

12

argues that Mr. Lewis is not entitled to a *Franks* hearing and that "[t]he additional facts that the Defendant complains were omitted, if anything, would have strengthened the facts upon which the Franklin District Judge could rely to determine the existence of probable cause." [R. 26-1 at 9.]

Upon review, the Court concludes that Detective Gatson included no deliberately false information or material omission in his warrant affidavit, and that Mr. Lewis is not entitled to a *Franks* hearing. Mr. Lewis takes issue with the omission of information that files on his computer were not opened by Detective Gatson, that the state judge was not made aware that both a billing and service address were provided to the officers from their subpoena of the offending IP address, and that the offending IP address had connected to online child exploitative material over a year prior to the 'knock-and-talk.' *Id.* But there is no evidence in the record that the failure to provide this information rendered the state judge "misled" as to preclude the application of good faith.

Ultimately, the warrant affidavit provided only that the officer was experienced, that a search of Mr. Lewis's electronics had occurred, and that the search had revealed criminal activity. [*See* Def. Exh. 1 at 4.] The state judge approved Detective Gatson's request with information insufficient to establish probable cause. Accordingly, it cannot be conclusively established that the inclusion of *more* facts would have led to a denial of the application. Despite Mr. Lewis's assertions, the record provides no evidence that Detective Gatson knew, or was reckless in not knowing, that he should have included the facts to which Mr. Lewis points in his warrant affidavit.

---

allegation of error, the Court will analyze whether Mr. Lewis was entitled to a hearing specifically dedicated to his *Franks* allegation.

Similarly, Mr. Lewis is not entitled to a *Franks* hearing. "Under *Franks v. Delaware*, 488 U.S. 154 (1978), a defendant is entitled to an evidentiary hearing on the veracity of the statements in the affidavit only if 1) there is a substantial preliminary showing that the specified portions of the affiant's averments are deliberately or recklessly false and 2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set aside." *United States v. Frazier*, 423 F.3d 526, 538 (6th Cir. 2005) (citing *United States v. Atkin*, 107 F.3d 1213, 1216-17 (6th Cir. 1997)). Mr. Lewis provides no evidence that Detective Gatson deliberately or recklessly failed to provide information to the state judge which may have led to his warrant application being denied. Though Mr. Lewis is correct that Detective Gatson's affidavit was insufficient to establish probable cause, its weakness is not the equivalent of deliberate or reckless action as to preclude the application of good faith or mandate a *Franks* hearing.

**b**

Next, Mr. Lewis contends that the good faith exception should not apply because the state judge acted as a "rubber stamp" for police activities. [R. 24-1 at 9-10.] In support, Mr. Lewis lists various details that he believes that Detective Gatson should have included in his warrant affidavit in order for the state judge to have found probable cause. [*See* R. 24-1 at 10.] And, because those details were not present, Mr. Lewis contends that the state judge's approval was "a mere ratification of the bare conclusions of others." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983). But, upon review, Mr. Lewis fails to carry his burden. *Frazier*, 423 F.3d at 537 ("The defendant carries the burden of proving that the issuing magistrate judge acted as a rubber stamp."). In general, "[w]here courts have addressed allegations that a magistrate judge has acted as a rubber stamp for police, there [] have been allegations of improper conduct on the part

14

of the magistrate reflecting lack of neutrality and detachment." *United States v. Gillespie*, 2017 U.S. Dist. LEXIS 154264 at *30 (E.D. Tenn. August 10, 2017) (citing *Frazier*, 423 F.3d at 537). Accordingly, when evidence of improper conduct on behalf of the magistrate judge is not present, the Sixth Circuit has found no exception to the good faith doctrine. *See, e.g.*, *Frazier*, 423 F.3d at 537 (finding a judge's reliance on unsworn testimony when granting a warrant application to be a "mistake" not warranting the preclusion of good faith); *see also United States v. Chaar*, 137 F.3d 359, 364 (6th Cir. 1998) ("There is no evidence to suggest that [the magistrate judge] was somehow involved in the 'competitive enterprise of ferreting out crime' […] or that he was blindly and automatically approving the warrant.") (internal citations omitted). Consequently, though Mr. Lewis and the Court agree that Detective Gatson's warrant application was insufficient to permit the state judge's finding of probable cause, Mr. Lewis has failed to show the judge's decision was caused by improper conduct as to preclude the application of good faith.

c

Third, Mr. Lewis contends that the warrant affidavit was "bare bones" and that, consequently, official belief in the existence of probable cause was unreasonable. [*See* R. 40 at 5.] But this contention also fails to preclude the application of good faith. A bare-bones affidavit "is commonly defined as one that states only 'suspicions, beliefs, or conclusions,' without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Laughton*, 409 F.3d 748; *see also United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) ("Put more simply, a bare-bones affidavit is a conclusory affidavit, one that asserts 'only the affiant's belief that probable cause existed.'") (internal citations omitted). But a bare-bones affidavit is not to be confused with an affidavit that simply falls short of the probable

15

cause standard. *White*, 874 F.3d at 497. "If the reviewing court is 'able to identify in the averring officer's affidavit *some* connection, regardless of how remote it may have been' – 'some modicum of evidence, however slight' – 'between the criminal activity at issue and the place to be searched,' then the affidavit is not bare bones and official reliance on it is reasonable." *Id.* (quoting *Laughton*, 409 F.3d at 749-50). So, "[a]n affidavit cannot be labeled 'bare bones' simply because it lacks the requisite facts and inferences to sustain the magistrate's probable-cause finding; rather, it must be *so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it." *Id.* (citing *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003)).

It is evident that the warrant in this matter cannot be labeled "bare bones," despite its lack of the "requisite facts and inferences to sustain the magistrate's probable-cause finding." *Id.* Despite the affidavit providing only a remote, general connection between Mr. Lewis's alleged criminal activity and his electronic devices, an application of the good faith exception only requires "some modicum of evidence, however slight." *Id.* (quoting *Laughton*, 409 F.3d at 749-50). In his affidavit, Detective Gatson describes his lofty experience in law enforcement, explains that Mr. Lewis's laptop was searched at his home address, and indicates that "it became apparent" that Mr. Lewis had engaged with child sexual exploitative material. [*See* Def. Exh. 1 at 4.] Despite failing to provide facts in the affidavit to have supported a finding of probable cause, Detective Gatson did provide "some modicum of evidence, however slight" that evidence of criminal activity was present on Mr. Lewis's electronic devices. *See id.* Accordingly, his affidavit cannot be deemed 'bare bones' as to preclude an application of good faith.

16

d

Finally, Mr. Lewis contends that "the fourth [exception] also applies because the warrant is so facially deficient that it could not reasonably have been presumed valid by Det. Gatson." [R. 40 at 4.]  In support, Mr. Lewis contends that Detective Gatson "knew […] he had only suspicions, beliefs, or conclusions that evidence of a crime was on Mr. Lewis's laptop and/or cell phone" and that neither he nor any other officer "access[ed] the files to determine whether such suspected material was viewed […]." *Id.*  But this argument is simply a reiteration of Mr. Lewis's overarching contention that probable cause for a warrant did not exist.  This argument is not an attack on the validity or scope of the warrant itself.  *See White*, 874 F.3d at 496, n.1 ("the body of his argument focuses solely on the contents of the affidavit, which suggests to us that he conflated the *warrant* with the *supporting affidavit*.  The 'facially deficient' exception pertains to the former, not the later."); *see also United States v. Roos*, 2013 U.S. Dist. LEXIS 37787 at *6 (E.D. Ky. March 18, 2013) (analyzing whether the scope of a warrant itself rendered the warrant 'facially deficient' as to preclude the application of the good faith doctrine).  Accordingly, Mr. Lewis has failed to establish that the fourth exception precludes an application of the good faith doctrine.

### III

Despite the constitutional insufficiency of Detective Gatson's warrant affidavit, evidence gathered from the search and seizure of Mr. Lewis's electronics will not be suppressed because the officers relied on the warrant in good faith.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Court **DECLINES TO ADOPT** the Magistrate Judge's Report and Recommendation [R. 34];

17

2. Mr. Lewis's first three objections are **OVERRULED AS MOOT**, while his fourth objection is **SUSTAINED** [R. 36];

3. Mr. Lewis's Motion to Suppress [R. 24] is **DENIED**.

This the 15th day of March, 2022.

Gregory F. Van Tatenhove
United States District Judge