1           UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF KENTUCKY
2            CENTRAL DIVISION FRANKFORT

3
    UNITED STATES OF AMERICA,
4
         Plaintiff,
5
                            Docket No. 3:21-CR-21
6   VS.                     At Frankfort, Kentucky
                            Monday, March 28, 2022
7                           1:49 a.m.
    EDWARD LEONIDIS LEWIS,
8
         Defendant.
9                              - - -

10     TRANSCRIPT OF REARRAIGNMENT PROCEEDINGS BEFORE
      U.S. DISTRICT JUDGE GREGORY F. VAN TATENHOVE
11
                              - - -
12
    APPEARANCES:
13
    For the United      DAVID A. MARYE
14  States:            Assistant United States Attorney
                       260 West Vine Street
15                     Suite 300
                       Lexington, Kentucky  40507-1612
16                     (859) 685-4873

17  For the Defendant:  DAVID J. GUARNIERI
                        McBrayer PLLC
18                      201 East Main Street
                        Suite 900
19                      Lexington, Kentucky  40507
                        (859) 231-8780
20
    Court Reporter:     SANDRA L. WILDER, RMR, CRR
21                      Official Court Reporter
                        313 John C. Watts Federal Building
22                      330 West Broadway, Suite 327
                        Frankfort, Kentucky  40601
23

24        Proceedings recorded by mechanical stenography,
       transcript produced by certified court reporter.
25

1              [*Proceedings commenced at 1:49 p.m. in open
2 court*]
3              THE COURT:  Thank you.
4              Good afternoon, ladies and gentlemen.
5              Madam Clerk, would you call the pending case,
6 please.
7              COURTROOM DEPUTY:  Yes, Your Honor.
8 Frankfort Criminal Action 21-CR-21, United States of
9 America versus Edward Leonidis Lewis, this matter
10 being called for rearraignment, Your Honor.
11              THE COURT:  Thank you.
12              Counsel, state your appearances, please.
13              MR. MARYE:  David Marye for the United
14 States.  Good afternoon, Your Honor.
15              THE COURT:  Mr. Marye, good afternoon.
16              MR. GUARNIERI:  Good afternoon, Your Honor.
17 David Guarnieri for Edward Lewis.
18              THE COURT:  Mr. Guarnieri, good to see you.
19 Good to have you both in federal court this afternoon.
20              Mr. Lewis, this matter is called on my docket
21 because your lawyer's indicated you want to plead
22 guilty this afternoon; is that correct?
23              THE DEFENDANT:  Yes, sir.
24              THE COURT:  We're going to accomplish three
25 different things with this proceeding.

1          The first thing I need to do is ask you a
2     series of questions just to make sure you're in the
3     right frame of mind to make what is a serious
4     decision, of course.  We're not going to trying to
5     embarrass you.  These are the same questions that I
6     ask every criminal defendant.
7          THE DEFENDANT:  Yes, sir.
8          THE COURT:  Secondly, you have a number of
9     rights or protections that you're going to give up if
10    you plead guilty, and we'll just go over those.  Make
11    sure you understand what you're giving up by pleading
12    guilty; make sure you don't have any questions.
13         And then finally, there will be a
14    consequence.  There will be a sentence.  This is not
15    the proceeding in which we're going to determine what
16    that is.  In fact, we can't know with any certainty
17    what your sentence will be in this case, but what we
18    can do is focus your attention on what I call the
19    worst case scenario, the maximum penalties that you
20    could face, talk a little bit about the process that
21    we're going to use to make a decision about your
22    sentence, and make sure you're clear about how that's
23    going to unfold.
24         As you can see, it's really important that
25    you understand these proceedings, so if at any time I

1  say something this afternoon that's confusing, will

2  you ask me to explain myself?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  All right.  You're very ably

5  represented by Mr. Guarnieri.

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  He's got lots of experience, a

8  fine attorney.

9          If at any time you want to consult with him

10 during this proceeding, you can do so, and you can do

11 so confidentially.  Do you understand that?

12         THE DEFENDANT:  Yes, sir.  Thank you.

13         THE COURT:  All right.  I'm going to have you

14 come stand here at the podium.  Your lawyer can

15 accompany you.

16         The first thing we need to do is administer

17 an oath to you.  So if you'll direct your attention to

18 the courtroom deputy.

19         COURTROOM DEPUTY:  Please raise your right

20 hand.

21         [THE DEFENDANT EDWARD LEONIDIS LEWIS WAS

22 SWORN]

23         THE COURT:  So you're under oath.  I expect

24 you'll answer my questions truthfully.

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  I know you'll do that.  I do have

2     to tell you, though, that if you choose not to, you

3     could face another felony, making a false statement or

4     perjury.

5          You also have a right that I talk about at

6     the beginning.  It's called the right to remain

7     silent.  You probably heard that phrase.  It simply

8     means, Mr. Lewis, that you are the only person in this

9     courtroom that can make the decision to go forward and

10    plead guilty that's going to result in a felony

11    conviction.  Mr. Guarnieri cannot make you do this.

12    Mr. Marye cannot make you do this.  I cannot make you

13    do this.  You have an absolute right not to say

14    another word, just remain silent, and then we'll let a

15    jury decide whether you're guilty or not guilty.

16          Do you understand if you go forward now, that

17    you're waiving that right?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Tell me your full name.  Let's

20    make sure I've got it correct.

21          THE DEFENDANT:  Edward Leonidas Lewis.

22          THE COURT:  Is that middle name a family

23    name?

24          THE DEFENDANT:  Yes, sir.  It's been passed

25    down from the mountains.

1        THE COURT:  That's a strong middle name,
2  Mr. Lewis.  And tell me how old you are, sir.
3        THE DEFENDANT:  Right now I'm 54.
4        THE COURT:  Fifty-four (54).  Okay.  And how
5  far did you go in school?
6        THE DEFENDANT:  I have a bachelor of science.
7        THE COURT:  Okay.  And what did you study?
8        THE DEFENDANT:  Electronic engineering.
9        THE COURT:  And where did you study?
10        THE DEFENDANT:  DeVry Institute of Technology
11  in Columbus, Ohio.
12        THE COURT:  All right.  I'm interested as an
13  adult kind of roughly in order the kind of work you've
14  done.  What's been your work path as an adult?
15        THE DEFENDANT:  I was an electrician and a
16  robot programmer at Sylvania for about 13 years.
17        I worked as an engineer for the last six
18  years of that.  The first six years was an
19  electrician, the last six and a half, seven as an
20  engineer.
21        THE COURT:  Okay.
22        THE DEFENDANT:  After that, I gave up that
23  position and went into real estate, and I buy and sell
24  and repair, remodel, rent housing -- houses.
25        THE COURT:  And is that the last kind of

1 professional endeavor you've been involved in?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Okay.  Are you currently under

4 the care of a physician for any kind of medical

5 condition, maybe high cholesterol, your blood

6 pressure, anything at all like that?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Are you currently under the care

9 of a mental health professional?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  All right.  No psychiatrist,

12 psychologist?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  Ever been treated or hospitalized

15 for any kind of mental condition?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Ever been diagnosed with any kind

18 of mental condition?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  Ever been treated or hospitalized

21 for an addiction to drugs or alcohol?

22          THE DEFENDANT:  No, sir.

23          THE COURT:  Have you used any drugs, legal or

24 otherwise, in the last 24 hours?

25          THE DEFENDANT:  No, sir.

1          THE COURT:  What about alcohol?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  I wouldn't think so.

4          THE DEFENDANT:  No.  It's been years.

5          THE COURT:  Well, that's good.

6          Mr. Guarnieri, have you had any difficulty in

7    communicating with your client?

8          MR. GUARNIERI:  No, Your Honor.

9          THE COURT:  And, Mr. Marye, is the government

10   in possession of any information at all that would

11   suggest that Mr. Lewis is not competent to enter a

12   plea this afternoon?

13         MR. MARYE:  No, Your Honor.

14         THE COURT:  Well, based on your answers to my

15   questions, and it's affirmed by the lawyers, I do

16   think you're competent to enter a plea this afternoon.

17         Now, we notify defendants about the charge or

18   charges against them with a legal indictment called an

19   indictment.  I just want to make sure you got a copy

20   of that.  Did you?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Okay.  And most importantly, I

23   want to make sure you feel like you've had enough time

24   to talk to Mr. Guarnieri about this case, have all

25   your questions answered, talk about the charges.  Has

1    that occurred?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Have you been satisfied with the

4    advice and counsel you've received?

5            THE DEFENDANT:  Extremely satisfied.

6            THE COURT:  Yeah, that doesn't surprise me.

7    That's good.

8            Now, you've decided to plead guilty because

9    you've worked out an agreement with the United States;

10   we call that a plea agreement.

11           So I would like that original document

12   delivered to me, please, and then I'm going to have

13   some questions about that just to make sure we're all

14   on the same page.

15           I've been handed two documents; one's nine

16   pages, inclusive of the signature page, and then we

17   have a supplement that's prepared in every criminal

18   case in the Eastern District of Kentucky.

19           And it looks like, Mr. Marye, you signed both

20   of these documents earlier today.  Is that your

21   original signature?

22           MR. MARYE:  Yes, sir.

23           THE COURT:  All right.  And then,

24   Mr. Guarnieri, I can't tell if that's your signature

25   or your colleague Mr. Nichols.

```
1            MR. GUARNIERI:  Mr. Nichols, Your Honor.

2            THE COURT:  And you're familiar with his

3    signature?

4            MR. GUARNIERI:  I am.

5            THE COURT:  And those are his original

6    signatures dated March 18th on these documents?

7            MR. GUARNIERI:  They are, Your Honor.

8            THE COURT:  Okay.  And then, Mr. Lewis, it

9    looks like back on March 18, you signed both of these

10   documents; is that correct?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Okay.  Now, I also want the

13   record to reflect on page 3, there's been some minor

14   handwritten changes.

15           And so, Mr. Marye, it looks like you've

16   initialed those changes.

17           You agree on behalf of the United States?

18           MR. MARYE:  Yes, Your Honor.

19           Mr. Guarnieri and I were speaking before

20   court.  There's also one on page 5 similarly that I

21   initialed.  We just crossed out, I think, four words.

22   And I'll be glad to explain that to the Court and

23   Mr. Lewis as I'm going through the plea agreement if

24   you'd like --

25           THE COURT:  Okay.
```

```
 1            MR. MARYE:  -- or now if you prefer.

 2            THE COURT:  I think that'll be fine, as long

 3  as everybody's in agreement.

 4            Mr. Guarnieri, those are your initials?

 5            MR. GUARNIERI:  They are.

 6            THE COURT:  And then, Mr. Lewis, you

 7  initialed that as well?

 8            THE DEFENDANT:  Yes, sir.

 9            THE COURT:  Your lawyer explained to you why

10  those changes were being made?

11            THE DEFENDANT:  Yes, sir.

12            THE COURT:  Did you get a chance to read

13  these documents before you signed them?

14            THE DEFENDANT:  Yes, sir, I did.

15            THE COURT:  And did you understand each of

16  these paragraphs?

17            THE DEFENDANT:  Yes, I do.

18            THE COURT:  Has anybody promised you anything

19  that's not included in these written documents?

20            THE DEFENDANT:  Not at all, Your Honor.

21            THE COURT:  Has anybody said to you, If

22  you'll sign this, I'm going to guarantee you'll get a

23  particular sentence?

24            THE DEFENDANT:  Not at all, Your Honor.

25            THE COURT:  Anybody pressure you, coerce you,
```

1  threaten you to sign them?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  Did you sign them because you're

4  guilty of the crime you're going to plead guilty to?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  All right.  It's really important

7  that we're all on the same page as to what's been an

8  agreed to and the record reflect that that's the case.

9  So here's what I'm going to do.  I'm going to have

10 Mr. Marye summarize each of these paragraphs.  He's

11 not going to read them word for word, he's just going

12 to summarize them, and I'd like for you to listen

13 carefully, because when he's done, then I'm going to

14 ask you whether that summary's consistent with your

15 understanding of what the agreement is.  And if you

16 hear something that seems different or doesn't apply,

17 that's fine, we'll stop and then we'll work it out.

18         THE DEFENDANT:  Yeah, that's fine.

19         THE COURT:  You with me?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Okay.  All right.  Mr. Marye.

22         MR. MARYE:  Your Honor, thank you.

23         And, Your Honor, first off, I'm sorry to

24 admit that there's one more mistake, and that is that

25 I did not include the word "superseding."  There's a

superseding indictment.  And normally we have the
defendant plead to the superseding indictment or count
of that indictment, and we will then agree to move to
dismiss the remaining counts, as well as the original
indictment.  So I wanted to put that on the record,
and I apologize to the Court that I failed to catch
that as I was preparing and reviewing the plea
agreement.

THE COURT:  Do you think you need to make any
other alterations to this plea agreement?

MR. MARYE:  No, Your Honor, I do not.  I sure
hope not.

THE COURT:  Mr. Guarnieri, are you okay with
that, with that representation on the record?

MR. GUARNIERI:  I am, Your Honor.

THE COURT:  Okay.

MR. GUARNIERI:  Mr. Marye had alerted me to
that when he caught that this morning in his final
review, but yes.

THE COURT:  Okay.  Mr. Marye.

MR. MARYE:  Yes, Your Honor.

Mr. Lewis is going to plead guilty to Count 1
of the superseding indictment, and this is a plea
under 11(c)(1)(C), in which it is a conditional plea
which allows him to -- he reserves the right to appeal

1  this Court's denial of his pretrial motion to
2  suppress, specifically limited, however, to whether
3  the district court erred by finding that the good
4  faith exception to the exclusionary rule precludes
5  suppression because, one, the search warrant affidavit
6  did not contain deliberately false information or
7  material omissions that mislead the issuing
8  magistrate, or entitled the defendant to a hearing
9  under *Franks V. Delaware* with the citation.
10       Two, the issuing magistrate did not abandoned
11  his judicial role and act as a rubber stamp for the
12  police.
13       Three, the affidavit was more than a bare
14  bones affidavit.
15       And four, that the defendant's claim that the
16  warrant was so facially deficient, that it could not
17  reasonably have been presumed to be valid was simply
18  an iteration of his overarching contention that
19  probable cause did not exist for the issuance of a
20  warrant.
21       Obviously, if the defendant prevails or wins
22  on the appeal of his denial of the pretrial motion to
23  suppress, then the Court may -- he may be allowed to
24  withdraw his guilty plea.
25       Paragraph 2 sets out the essential elements

1  of the offense to which he has pleaded guilty.

2          And at paragraph 3, we have set out the

3  factual basis for that.  And specifically as the Court

4  pointed out in paragraph 3(b), there's a slight

5  change.  It had read "female relatives, in

6  parenthesis, (his cousin's daughters.)"

7          We've now stricken the word "relatives" and

8  it says "two minor females" and then in parenthesis

9  "his cousin's" is in quotation marks "daughters."

10          As I understand the relationship, the minor

11  victims are the daughters of a man whose mother was

12  married to the defendant's second cousin.  Now, that's

13  my understanding from the minor victim's father,

14  correct?

15          And Mr. Lewis, I see, is shaking his head.

16  If you want him to maybe talk about that now or later.

17          The import of all of this is that, as

18  Mr. Guarnieri pointed out, that he's reserved the

19  right to contest whether Mr. Lewis was a relative of

20  the minor victims, which, of course, is a two-level

21  enhancement under the guidelines.

22          THE COURT:  Yes.

23          MR. MARYE:  And I agree that he should have

24  that right to contest it.  It is a bit attenuated and

25  --

1          THE COURT:  Well, and it's a factual issue

2   that we'll just, I think, best reserve for the

3   presentence report and --

4          MR. MARYE:  Very well.

5          THE COURT:  -- Mr. Guarnieri has fairly put

6   everybody on notice that they'll --

7          MR. MARYE:  Yes, sir.

8          THE COURT:  -- work through that and contest

9   that particular factual predicate.  I think that's

10  fair.

11         MR. GUARNIERI:  Thank you, Your Honor.

12         MR. MARYE:  The remaining facts we believe

13  are accurate, of course, and that those do in fact

14  provide a factual basis for the plea, and that it

15  would prove the elements of the offense beyond a

16  reasonable doubt, and he admits to those other facts.

17         Paragraph 4 sets out the statutory

18  punishment, Your Honor.  Because Mr. Lewis does have a

19  previous conviction in the Franklin Circuit Court, the

20  mandatory minimum and maximum sentences are different

21  here.  And that, of course, is that it goes from the

22  normal 15 to 30 years mandatory minimum to a mandatory

23  minimum of 25, and then, of course, a maximum sentence

24  of 50 years, the normal fine, and then a term of

25  supervised release.

1          There's the mandatory special assessment of

2   $100 that applies.

3          And then there's an additional mandatory

4   special assessment of $5,000 pursuant to Title 18,

5   Section 3014 for non-indigent defendants convicted of

6   certain offenses, and that includes those in Chapter

7   110, which is the offense to which he is pleading

8   guilty, committed after May 29, 2015.

9          And then through March 11, 2022, when I

10  prepared the plea agreement, and since then, it's my

11  understanding that it has again been extended by

12  Congress to I think some date in September or later of

13  this year.

14         Paragraph 5, Your Honor, sets out what we

15  believe to be the applicable sentencing guidelines.

16  We reserve the right to object to or argue in favor of

17  other calculations.  And then we have set forth two

18  that we specifically do not agree whether or not they

19  apply, just to kind of put everybody on notice.  And

20  that is the two-level enhancement because the offense

21  allegedly involved the commission of a sexual act by

22  one of the minors, actually self-masturbation, or the

23  two-level increase because he -- the defendant was a

24  relative of the minor victim.

25         In paragraph 5E, Judge, there are four words

1  that are crossed out, and that is -- those words are

2  "and his previous conviction."  This goes to the

3  definitions that are in Section 4B1.1 and then 4B1.5,

4  the five-level enhancement.  And the defendant's

5  instant offense of conviction must be a covered sex

6  crime, which production of child pornography is.

7          The other provisions listed did not apply to

8  him.  And then his previous conviction, along with the

9  fact that he victimized two different minor victims

10  during the course of the instant offense and relevant

11  conduct amount to at least two separate occasions of

12  prohibited sexual conduct under the application note 4

13  to Section 4B 1.5.

14          However, I made the mistake.  His previous

15  convictions were merely for possession of child

16  pornography, and those do not qualify as a prohibited

17  sexual offense and -- prohibited sexual conduct under

18  the guidelines.

19          So we struck the words "and his previous

20  convictions" because that would not be applicable in

21  deciding whether or not that five-level enhancement

22  from Section 4B1.5 should be applicable in this case.

23          Paragraph 6, there is no agreement about his

24  criminal history category.

25          Seven, he will not file a motion for a

1 decrease in the offense level based on a mitigating

2 role or a departure motion under Chapter 5, parts (h)

3 or (k) of the guidelines.

4     With the exception of his right to appeal

5 this Court's denial of his pretrial motion to

6 suppress, he waives or gives up the right to appeal

7 the guilty plea, conviction, and the sentence, unless

8 the sentence were to exceed the statutory maximum.

9     And then except for claims of ineffective

10 assistance of counsel, he also waives or gives up the

11 right to attack collaterally the guilty plea,

12 conviction and sentence.

13     He has agreed, of course, to forfeit his

14 interest in the property that is listed in the

15 forfeiture allegation of the superseding indictment.

16     He is notified that he will be required to

17 register as a sex offender; that's in paragraph 11,

18 once he does serve any sentence of imprisonment.

19     And these are really the essential terms of

20 the plea agreement, Your Honor.

21     THE COURT:  Well, Mr. Guarnieri, you've heard

22 that description.  Is that consistent with your

23 understanding as to what your client's agreed to?

24     MR. GUARNIERI:  It is, Your Honor.

25     THE COURT:  And, Mr. Lewis, you've heard that

1  description.  Is that consistent with your

2  understanding of what you've agreed to?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  You understand this document's

5  like a contract; it requires you to do certain things,

6  requires the government to do certain things, but I'm

7  not bound by this contract.  Is that clear?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  What that means practically

10 relates mostly to sentencing, which, of course, I'm

11 bound by the law that I'm required to follow.  But if

12 it somehow is different than what's agreed to by the

13 parties, then I'm not bound, of course, by the plea

14 agreement.  Any questions about that?

15         THE DEFENDANT:  No, sir.

16         THE COURT:  All right.  Well, I next want to

17 focus your attention on kind of what you give up, in

18 essence, of pleading guilty.

19         So you know you lose your civil rights;

20 you're going to lose your right to vote and hold

21 public office, and you can't serve as a juror, you

22 can't possess a firearm, unless at some point in the

23 future those civil rights are restored to you.

24         You have a number of rights that are

25 connected to the right to a speedy trial, and that's

1 the first one.  You don't have to wait a long time

2 before we would schedule a trial date here in this

3 courtroom.

4          If you're worried about not having enough

5 money for a lawyer, if that was the case, then we

6 would provide a lawyer for you at trial.

7          If you're worried that maybe the witnesses

8 that you would want to have participate may not want

9 to get involved, in most circumstances, we can require

10 those witnesses to get involved.  And they have to

11 testify, by the way, right here in court in your

12 presence looking you in your -- in the eye.  Your

13 lawyer would get to ask the government witnesses tough

14 questions called that confrontation, confronting the

15 witnesses.

16          And as I mentioned at the beginning of the

17 proceeding, you would not have to testify at your own

18 trial.  You could remain silent.  If you chose to do

19 that, I would instruct the jury that they could not

20 use that fact against you in any way.  But here's the

21 most important protection that you have, that you're

22 presumed innocent.  No defendant in our system ever

23 has to come into court and somehow prove that they're

24 innocent.  It's always the government's burden from

25 the beginning of the trial to the end to prove you're

1  guilty beyond a reasonable doubt.  And the only way

2  they can do that is to convince 12 jurors unanimously

3  that they've met that burden.  Eleven to one doesn't

4  work; it has to be unanimous.

5      We make it difficult for the government to

6  use its power in a way that ultimately can take

7  someone's liberty away from them, so we put a lot of

8  protections in our system for criminal defendants.

9      Kind of the obvious point here is if you

10  plead guilty in a few minutes, there's no trial, and

11  so you're not going to benefit from those protections.

12  Is that clear?

13      THE DEFENDANT:  Yes, sir.

14      THE COURT:  All right.  I next want to focus

15  on the consequence.  And as I say, I'm going to focus

16  on the worst case scenario here.  I'm not saying this

17  is what your sentence will be.  But you're going to

18  plead to one count of using a minor to engage in

19  sexually explicit conduct for the purpose of producing

20  a visual depiction, and that criminal statute is 18

21  United States Code, Section 2251(a).

22      There's a mandatory minimum sentence

23  connected with this of 25 years.  The statutory

24  maximum sentence is 50 years.

25      Now, after any period of incarceration that's

1 imposed, you'll be released back into the community,

2 but you'll be on what's called supervised release.

3 There'll be at least five years of supervised release.

4 It could be in a case like this the rest of your life

5 where you'll have supervision.

6          You'll get to go -- you know, you'll get

7 completely released back to the public, go about your

8 business, but you'll have some rules and some

9 conditions that you'll have to follow because of the

10 conduct you've engaged in in the past.  And as long as

11 you follow those rules, there'll be no problems.  A

12 lot of it will be coordination with the probation

13 office will be a large measure of that.

14          But the worst case scenario would be you

15 would have trouble following the rules, you would end

16 up in violation of those conditions, and then you

17 could face up to another five years incarcerated, and

18 then life supervision after that.

19          Now, I don't expect that would happen, but

20 I'm just wanting to make sure you understand the worst

21 case scenario.

22          I am supposed to impose a fine in every case,

23 but we always look at your financial ability to pay in

24 making that determination.

25          The maximum fine here is a quarter of a

1  million dollars, so it's very significant.  But we'll

2  take a look at your financial picture before I make a

3  decision about whether a fine would be appropriate in

4  this case.

5          There is a special assessment that could be

6  imposed of $100 per count.

7          I believe this is a case that qualifies for

8  the additional special assessment; is that right,

9  Mr. Marye?

10          MR. MARYE:  Yes, Your Honor.  That's under

11  Title 18, Section 3014.

12          THE COURT:  Then we'll look at your financial

13  condition again; that's a $5,000 special assessment,

14  so we'll consider that at the time of sentencing, but

15  that could be part of your sentence, as well as

16  restitution.

17          We're going to wait until we see if victims

18  request any restitution, we'll work that out in kind

19  of the context of sentencing, but that could be

20  something that you would be required to pay under the

21  law.

22          Do you understand that these are the maximum

23  penalties that you could face?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Any questions about that at all?

1            THE DEFENDANT:  No, Your Honor.

2            THE COURT:  All right.  I know you and

3    Mr. Guarnieri have spent a long time kind of focused

4    on sentencing and kind of how much time you think you

5    might have to do and trying to anticipate that.  Those

6    are good conversations to have, and no defendant comes

7    in to plead guilty without having had those

8    conversations.

9            You probably know that in the coming weeks,

10   you're going to be interviewed by a probation officer,

11   and that officer will gather lots of information about

12   your education, your background, your work history,

13   your health history.  That's all going to be compiled

14   in a report called a presentence report.

15           Probably most significantly, there'll be a

16   recommended sentence.  And that's based on the

17   statutory minimums and maximums.  It's based on the

18   conduct you engaged in, specific conduct, any criminal

19   history that we might be interested in.  It's all kind

20   of a complicated regulatory framework that provides

21   judges with recommendations on what the sentence

22   should be.

23           There will be a certain number of months on

24   the low end and the high end.  Sometimes it's just

25   simply the mandatory minimum, depending on kind of

1  other factors that are considered.

2         Before I make a decision about your sentence,
3  you're going to get a copy of that report.  And in
4  working with Mr. Guarnieri, you can object to anything
5  in the report that you think's incorrect.  Maybe there
6  was a description, maybe it's a name that's
7  misspelled, maybe you think that recommended sentence
8  has not been correctly calculated.

9         That's fine.  If that happens, we'll have a
10 hearing and I'll hear arguments.  I might agree with
11 you; I might disagree with you.  The important thing
12 for you to think about today is we can't know exactly
13 how that turns out.

14        So you may have come in here today kind of
15 thinking, all right, I think the recommended sentence
16 is probably going to be "X".  That's fine.  If it
17 turns out to be "X", you won't have any concerns about
18 it.

19        But if it turns out to be higher than that,
20 when we get to sentencing, you'll be disappointed, but
21 under the law, you cannot then say, Well, I've changed
22 my mind.  I now want to have a trial.  I wouldn't be
23 able to let you do that.  Is that clear?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  And then the other thing is that

1 recommendation is exactly as I've been describing it

2 during this proceeding; it's a recommendation.  I

3 can't go below a statutory minimum, but I could go

4 below what's being recommended if I thought that was

5 just.  I could go above, though.  And if I went above,

6 again, you'd be disappointed, but you can't come to me

7 and say, Judge, I didn't think you were going to

8 sentence me above the recommendation, so now I want to

9 go to trial again.  The law doesn't allow me to let

10 you do that.  Do you understand that?

11            THE DEFENDANT:  Yes, sir.

12            THE COURT:  All right.  There's no parole in

13 the federal system.  So this isn't like the state

14 system where you could end up getting a long sentence,

15 serve a little bit of it and then get paroled.  We've

16 abolished that many years ago.  Is that clear?

17            THE DEFENDANT:  Yes, Your Honor.

18            THE COURT:  I want to then turn your

19 attention back to your plea agreement.  Do you have a

20 copy?  And it's okay if you don't.  I can just read

21 this paragraph to you.

22            Look at paragraph 8, if you would, please.

23 And I think you've spent a good bit of time on this

24 paragraph, and I just want the record to reflect that.

25            You know, one of the protections that you

1  have is that certain things that you disagree with

2  that happen in this court, you can ask another group

3  of three judges to take a second look, and we, of

4  course, call that an appeal.

5         And your lawyer has fairly argued on your

6  behalf as it relates to whether certain evidence will

7  be suppressed in this case, and he's reserved for you

8  the right to ask the Court of Appeals to take a second

9  look at my conclusion on the law, and that's well

10  within your rights.  And you're going to have the

11  right to do that.  And you'll have the right in the

12  limited ways to appeal some other things.  But

13  paragraph 8 largely waives your appeal rights.

14         THE DEFENDANT:  Correct.

15         THE COURT:  I just want to make sure you and

16  Mr. Guarnieri talked about that paragraph, and that

17  you understand the consequence of waiving those

18  specific appeal rights.

19         THE DEFENDANT:  Yes, Your Honor, I do.

20         THE COURT:  Mr. Guarnieri, do you agree that

21  your client understands the consequence of waiving

22  those appeal rights?

23         MR. GUARNIERI:  Yes, I believe he does, Your

24  Honor.

25         THE COURT:  I agree.  And based on what

1  you've said to me, Mr. Lewis, affirmed by your lawyer,

2  I think that waiver of appeal, specifically as it's

3  set out in the paragraph 8, is knowing, it's

4  voluntary -- you told me nobody pressured you to sign

5  this -- and I think you do understand the consequence

6  of waiving those appeal rights.

7  　　　　One final piece of business before I accept

8  your plea.  It's very important that I'm confident

9  that you understand the conduct that you engaged in

10  that's illegal and that you admit to it.  Because if

11  you've come in here today and you don't think you've

12  done anything wrong, I can't let you go forward and

13  plead guilty.

14  　　　　So I want to do three different things.  The

15  first thing I want to do is I want to ask Mr. Marye to

16  just put the elements of the crime that the government

17  has charged you with; I want him to put those on the

18  record, and then once he does that, I'm going to have

19  a question for you.  So listen carefully to Mr. Marye.

20  　　　　MR. MARYE:  Your Honor, those elements are

21  set out in paragraph 2 of the plea agreement.

22  　　　　First, it is that the defendant employed,

23  used, persuaded, induced, enticed, coerced a minor

24  victim to engage in sexually explicit conduct for the

25  purpose of producing a visual depiction of that

1  conduct.

2        And second, that the defendant knew that the

3  visual depictions he employed, used, persuaded,

4  induced, enticed and coerced the minor victims to

5  create were produced or transmitted using materials

6  that were mailed, shipped or transported in or

7  affecting interstate or foreign commerce by any means,

8  including by a computer.

9        THE COURT:  So imagine, Mr. Lewis, we go to

10  trial, the government calls witnesses, the government

11  has exhibits that it puts in front of the jury.  Do

12  you think they would be able to prove your guilt of

13  each those elements beyond a reasonable doubt if this

14  case had gone to trial?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  So if you look at your plea

17  agreement, look at paragraph 3 with me, please.  And

18  you can see under that paragraph on page 2 there's

19  single-spaced paragraph A., and then if you go over to

20  page 3 there's B., where some of those changes were

21  made, and C. and D.  These reference victims, they

22  reference dates, they reference places.  These are the

23  facts that this plea agreement is based on.

24        When you signed the plea agreement, did you

25  do so because to the best of your knowledge, these

1  facts are true?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  So put all the legal language

4  aside.  Just tell me in your own words, what did you

5  do that you're now pleading guilty to; what conduct

6  did you engage in that's criminal conduct?

7          THE DEFENDANT:  I used an electronic device

8  to capture a minor child in the state of undress.

9          THE COURT:  Okay.  And where was that;

10  where -- what county were you in?

11          THE DEFENDANT:  In Franklin County.

12          THE COURT:  In Franklin County.

13          Well, Mr. Guarnieri, do you think there is a

14  satisfactory factual basis to accept a plea from your

15  client?

16          MR. GUARNIERI:  I do, Your Honor.

17          THE COURT:  And, Mr. Marye, do you agree?

18          MR. MARYE:  I believe so.  I guess I'd like

19  to just add, Your Honor, that in fact that it was a

20  lewd and lascivious exhibition of the genitalia of the

21  minor victim, the images that were captured.

22          THE COURT:  Do you agree with that,

23  Mr. Lewis?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Okay.

1          All right, sir, how do you plead as to Count
2   1 that was set forth in what I believe is a
3   superseding indictment; do you plead guilty or not
4   guilty?
5          THE DEFENDANT:  Guilty.
6          THE COURT:  Well, I'm satisfied with the
7   responses that have been given to me by the defendant.
8          Accordingly, it's the finding of the Court in
9   the case of the United States of America versus
10  Mr. Edward Leonidas Lewis, 21-21, I think you're fully
11  competent and capable of entering an informed plea, I
12  think this plea of guilty is knowing and voluntary,
13  it's supported by an independent basis in fact that
14  contains the essential elements of the crime that's
15  been charged, I'm going to accept your plea, sir, and
16  I'm going to adjudge you guilty of the crime --
17         THE DEFENDANT:  Thank you, Your Honor.
18         THE COURT:  -- that you've pled guilty to.
19         Now, having accepted your guilty plea, any
20  trial that may have been held in abeyance is going to
21  be set aside.  There'll be no need for a trial in this
22  case.
23         We'll direct the United States Probation
24  Office to prepare a presentence investigation report.
25  Encourage you to cooperate fully in that process; I

1  know you'll do that.  Make sure your lawyer's part of

2  that as well.  It protects your rights, makes sure I

3  have the best information to make a fair decision

4  about your sentence.

5          We will file the plea agreement in the

6  record.  The supplement is in this district returned

7  to the U.S. Attorney's Office which serves as the

8  custodian of that document.

9          I would like to set this for sentencing.  I

10 hereby set it for July 6, 2022, at 10:00.  That will

11 be here in Frankfort, and we'll have a sentencing

12 order entered that will govern those proceedings.

13         Mr. Lewis, have you understood these

14 proceedings?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Any questions about what's

17 happened this afternoon?

18         THE DEFENDANT:  No, sir.

19         THE COURT:  Mr. Guarnieri, any other matters

20 I can address for your client?

21         MR. GUARNIERI:  Not at this time, Your Honor.

22         THE COURT:  Okay.  Mr. Marye, anything else

23 for the United States?

24         MR. MARYE:  No.  Thank you, judge.

25         THE COURT:  All right.  Well, the defendant

1 will be remanded to further custody.

2        The next time I see you, sir, will be at

3 sentencing in a few months.

4        And we'll stand in recess pending the next

5 item on my docket.

6        *[END OF PROCEEDINGS – 2:23 p.m.]*

7                    * * * * *

8

9              C E R T I F I C A T E

10

11        I, SANDRA L. WILDER, RMR, CRR, certify that

12 the foregoing is a correct transcript from the record

13 of proceedings in the above-entitled matter.

14

15 /s/ Sandra L. Wilder RMR, CRR      Date of Certification:
   Official Court Reporter           October 11, 2022

16

17

18

19

20

21

22

23

24

25