UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Crim. No. 3:21-cr-00021-GFVT |
| v. ) | |
| ) | |
| EDWARD LEONIDAS LEWIS, ) | **MEMORANDUM OPINION** |
| ) | **&** |
| Defendant, ) | **ORDER** |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Edward Lewis's Motion *in Limine* to Suppress Evidence. [R. 82.] The Court previously considered a similar motion in this case and ultimately determined that suppression was unwarranted. The Sixth Circuit disagreed, thereby vacating Mr. Lewis's conviction and remanded the case for further proceedings. Following the issuance of the Sixth Circuit's mandate, the United States decided to continue prosecuting the case. A new warrant was issued, and the previously suppressed evidence was re-seized. Subsequently, Mr. Lewis was reindicted. He now asks this Court to suppress the evidence searched and seized on the government's second go-round. For the reasons that follow, Mr. Lewis's motion will be **DENIED**.

**I**

On February 25, 2021, law enforcement agents went to the home of Defendant Edward Lewis to conduct a criminal investigation. [R. 82-1 at 1; R. 85 at 4.] A foreign law enforcement agency had identified an IP address associated with Mr. Lewis as one that was linked to an online community of individuals regularly sending and receiving child pornography on the dark

web. [R. 85 at 2-3.] When the agents arrived at Mr. Lewis's home, they explained that they were conducting a criminal investigation relating to child sexual abuse material files located on the dark web. *Id*. at 4. Upon permission from Mr. Lewis, a Kentucky State Police forensic examiner previewed Mr. Lewis's phone and laptop computer. *Id*.

The forensic preview revealed thumbnail images and files on Mr. Lewis's devices that were indicative of child sexual abuse material. *Id*. at 4-5. After seeing this preview evidence and hearing Mr. Lewis say that he thought it was illegal only to possess, not view, child pornography, law enforcement decided to halt the preview and obtain a search warrant. *Id*. at 5. The warrant affidavit did not include any information relating to Mr. Lewis's dark web activity, focusing instead only on law enforcement's discussion with Mr. Lewis and general information about the preview of his devices. *Id*. at 6. A search warrant was issued, and the subsequent search and seizure of Mr. Lewis's devices revealed child sex abuse material from the internet. *Id*. Mr. Lewis's devices also contained videos from a hidden camera showing two victims—the daughters of Mr. Lewis's previous tenant—in various stages of undress in the bathroom and bedroom of Mr. Lewis's property. *Id*.

On October 21, 2021, the United States introduced an indictment charging Defendant Edward Lewis with seven criminal counts relating to the possession, receipt, and attempted production of child pornography. [R. 1.] One month later, a superseding indictment was filed. [R. 19.] Shortly after pleading not guilty to the charges against him, Mr. Lewis filed a motion to suppress the evidence obtained in the execution of the February 25, 2021, search warrant. [R. 24.] Mr. Lewis stated that the affidavit submitted in support of the search warrant lacked probable cause because it contained material representations and material omissions. *See id*.

2

Magistrate Judge Edward Atkins issued a Report and Recommendation as to the appropriate disposition of Mr. Lewis's motion to suppress. [R. 34.] The Court declined to adopt Judge Atkins's Report and Recommendation and instead issued its own Memorandum Opinion and Order explaining that, while the warrant affidavit was constitutionally insufficient, the good-faith exception to the exclusionary rule precluded suppression. [R. 42 at 11.] Subsequently, Mr. Lewis was rearraigned and pled guilty to Count One of the superseding indictment. [R. 45.] As part of his plea agreement with the government, however, Mr. Lewis reserved the right to appeal this Court's denial of his motion to suppress. [*See* R. 46 at 1, 5.] Mr. Lewis was adjudged guilty and sentenced to 300 months' imprisonment to be followed by a lifetime term of supervised release. [R. 51; R. 53.] Following the entry of judgment, Mr. Lewis appealed the denial of his motion to suppress. [*See* R. 54; R. 58.]

On appeal, the Sixth Circuit agreed with this Court that the warrant affidavit was deficient of facts to support probable cause. [R. 68-1 at 7.] The Sixth Circuit disagreed, however, that the good-faith exception applied. *Id*. at 13. Accordingly, the Order denying Mr. Lewis's motion to suppress was reversed, Mr. Lewis's conviction was vacated, and the case was remanded for further proceedings. *Id*. at 18.

In October 2023, upon issuance of the Sixth Circuit's mandate, the government secured a new warrant in order to search and seize Mr. Lewis's electronic devices. After the new search revealed the same incriminating evidence as the 2021 search had, the government introduced a second superseding indictment. [R. 74.] The latest indictment only charged Mr. Lewis with three criminal counts, but introduced a previously uncharged violation of 18 U.S.C. § 2252(a)(4)(B), "access with intent to view." [R. 74 at 2.] At his arraignment on the second superseding indictment, Mr. Lewis pled not guilty. [R. 79.] With the date of his jury trial fast

3

approaching, Mr. Lewis filed a motion *in limine* to suppress all evidence obtained pursuant to the 2023 warrant. [R. 82.] The Court now turns to that pending motion, which is ripe for review.

## II

### A

Mr. Lewis argues first that the law-of-the-case doctrine and the mandate rule require that the seized evidence remain suppressed. Under the doctrine of the law of the case, determinations of the court of appeals on issues of law are binding on the district court. *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). Essentially, the law of the case prevents the relitigation of an issue once it has been decided. *Bowles v. Russell*, 432 F.3d 668, 676 (6th Cir. 2005). The mandate rule is, in essence, a specific application of the law-of-the-case doctrine. *Id*. The mandate rule's basic tenet is that a district court is bound to the scope of the remand issued by the court of appeals. *Id*. Practically, this tenet means that the district court cannot "expand its inquiry beyond the matters forming the basis of the appellate court's remand." *Id*.

Mr. Lewis contends that the government's post-appeal efforts to continue prosecuting are meritless because the Sixth Circuit was "unequivocal in its decision in favor of preserving constitutional protections even at the expense of [the] prosecution's case-in-chief . . . ." [R. 82-1 at 7.] According to Mr. Lewis, the suppressed evidence remains unavailable going forward. He avers that "the government [can] not cure suppression by simply reissuing a more robust warrant affidavit for the identical inventoried 'fruits' from the same 'poisonous tree.'" *Id*.

Unfortunately for Mr. Lewis, his argument misses the mark. The law-of-the-case doctrine limits relitigation of identical issues decided at an earlier stage in litigation. *See Musacchio v. United States*, 577 U.S. 237, 244-45 (2016) ("The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to

4

govern the same issues in subsequent stages in the same case." (internal quotations and citations omitted).  In this case, the Sixth Circuit's opinion specifically considered the legality of the 2021 search warrant, concluding that the evidence taken beyond the scope of Mr. Lewis's consent was obtained through searches and seizures not supported by a valid warrant or a valid claim to an exception to the warrant requirement.  [R. 68-1 at 18.]  When declining to apply the exclusionary rule, the Sixth Circuit examined the police error relating to the 2021 warrant affidavit.  The appellate court's holding did not decide that the exclusionary rule applied in perpetuity, or that the evidence seized was to *never* be admissible.  Rather, the Sixth Circuit reversed this Court's order denying Mr. Lewis's motion to suppress, vacated Mr. Lewis's conviction, and the case was "remanded for further proceedings."

     Even though the government was sent back to square one, it was not by any means barred from obtaining the previously suppressed evidence through legal means.  Thus, the government would be free to obtain a new warrant and seize Mr. Lewis's electronics so long as the new warrant is supported by probable cause through independent means.  *See United States v. Vilar*, 530 F. Supp. 2d 616, 633 (S.D.N.Y. 2008) ("it is well-settled that the independent source doctrine may apply where, as here, the Government executed a later, lawful 'reseizure' of evidence that was originally seized by means of an unlawful search.") (citing *Murray v. United States*, 487 U.S. 533, 541-42 (1988)).  Indeed, that is precisely what the government is attempting to do here.  The parties are not relitigating an issue that has already been decided.  Nor is the Court expanding its inquiry past the Sixth Circuit's mandate.  The issue at hand—whether the 2023 warrant is valid—is wholly distinct from the issue decided by the Court of Appeals.  And this Court's consideration of the 2023 warrant's validity fits squarely within the Sixth Circuit's mandate, which is to proceed this case forward.  Because the Court is not crossing

track that has already been lain, and because the Court is not going beyond the Sixth Circuit's mandate, proceeding to consider the validity of the 2023 warrant is appropriate.

**B**

The Fourth Amendment to the United States Constitution protects an individual's right to be secure in their persons, houses, papers, and effects from unreasonable searches and searches. U.S. Const. amend. IV. Accordingly, warrants to effectuate a search or seizure must be based upon probable cause and supported by oath or affirmation, "particularly describing the place to be searched, and the persons or things to be seized." *Id*. When the government effectuates an unlawful search, the exclusionary rule provides a remedy by prohibiting the introduction of tangible materials seized. *Weeks v. United States*, 232 U.S. 383 (1914). The "fruit of the poisonous tree" doctrine is an offshoot of the exclusionary rule. *United States v. Leake*, 95 F.3d 409, 411 (6th Cir. 1996). The fruit of the poisonous tree doctrine bars evidence that, though not obtained in an illegal search, was derived from information or items obtained in an illegal search. *Id*.

Evidence obtained from an illegal search does not, however, become "sacred and inaccessible." *Id*. at 411-12 (citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920)). The government can show that evidence that might be excluded under the fruit of the poisonous tree doctrine should be admitted under another rationale. *Id*. at 412. This permittance ensures that the government "is not put into a *worse* position simply because of some earlier police error or misconduct . . . ." *Id*. (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984) (emphasis in original)).

The independent source doctrine provides one rationale under which the government can admit evidence originally obtained in or derived from an illegal search. *Id*. The independent

6

source doctrine allows evidence to be admitted if the government can show that it was discovered through sources "wholly independent of any constitutional violation." *United States v. Jenkins*, 396 F.3d 751, 758 (6th Cir. 2005) (quoting *Nix*, 467 U.S. at 443). "[I]n the classic independent source situation, information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source unrelated to and independent of the unconstitutional search." *Murray*, 487 U.S. at 538-39 (citation omitted). The underlying question is whether the evidence has been come at "by the exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Jenkins*, 396 F.3d at 757 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

Here, Mr. Lewis argues that the information contained in the 2023 warrant affidavit was not learned from an independent source. He contends that there exists a continued nexus between the 2021 unlawful search and seizure and the newest warrant, which targets the same evidence that was previously suppressed. He also points out that the devices previously searched and seized illegally have continued to remain in law enforcement for the past three years.

As an initial matter, Mr. Lewis's argument that the evidence has remained with the government in 2021 is inconsequential. The Supreme Court in *Murray* determined that seized objects do not have to be returned to private control before they can be cleanly reseized. 487 U.S. at 541-42. Rather, "[s]o long as a later, lawful seizure is genuinely independent of an earlier, tainted one (which may well be difficult to establish where the seized goods are kept in the police's possession) there is no reason why the independent source doctrine should not apply." *Id*. at 542. Thus, the ultimate question here is whether the search pursuant to the 2023 warrant was supported by a warrant affidavit containing an independent source of information. As *Murray* notes, the independent source doctrine would not apply where the federal agent's

7

decision to seek a warrant was prompted by what law enforcement had discovered as a result of the previous illegal search, or if information gleaned from that search was presented to the Magistrate Judge issuing the warrant. *Id*.

In the present case, it is apparent that the 2023 warrant is supported by an independent source. The 2023 warrant affidavit does not include any references to evidence or information obtained from the 2021 forensic examination of Mr. Lewis's electronics. Nor does the newest warrant affidavit contain any information secondarily derived from that search. Rather, the affidavit communicates Mr. Lewis's dark-web activity, the on-scene preview evidence obtained via Mr. Lewis's consent, and the 2023 statements by Victim 1 and Victim 2. [*See* R. 82-4.] Consider first Mr. Lewis's dark web activities, which served as the impetus for investigating Mr. Lewis. The government has, in numerous past cases, initiated criminal proceedings against defendants who access the type of sites that Mr. Lewis did on the dark web. Many of those cases, for better or worse, end up in front of this Court. The conclusion to be gleaned from that point is that Mr. Lewis's dark web activity by itself would prompt the government to investigate, especially when the person being investigated is, like Mr. Lewis, a registered sex offender.

Consider too the on-scene preview evidence obtained before the 2021 illegal search and seizure. This particular evidence was gained *before* the unlawful search. The Sixth Circuit held that this evidence was lawfully gotten because Mr. Lewis consented to the preview of his phone and laptop. The preview revealed multiple files suggesting that Mr. Lewis was viewing child pornography. [*See* R. 82-4 at 32-37.]

And consider last the 2023 statements made by Victim 1 and Victim 2. Both victims were first discovered when law enforcement saw thumbnail images of the victims on Mr. Lewis's cellphone during the preview search. And although their statements came after the

illegal search, they were not prompted by any of the evidence illegally obtained, nor did the statements reference any of the gleaned from the 2021 search. Moreover, law enforcement did not reach out to Victim 1 nor Victim 2; rather, Victim 1 voluntarily disclosed new information about Mr. Lewis's behavior towards her. Thus, because they do not derive from the illegal search, neither the evidence obtained during the preview at Mr. Lewis's house, nor the statements made by Victim 1 or Victim 2 can be considered fruit of the poisonous tree.

Taking all of this together, the Court can conclude with no hesitation that the independent search doctrine fits squarely within the four corners of this case. All of the information contained in the 2023 warrant affidavit was derived from sources independent of the illegal entry, and the decision to seek the warrant was based upon Mr. Lewis's conduct that the government legally observed. Because the "initial taint" of the evidence seized has been purged, and because Mr. Lewis does not otherwise challenge the sufficiency of particularized facts supporting the government's probable cause, the 2023 warrant will stand.

### C

Mr. Lewis crafts one last hail mary, which the Court will dispose of summarily. Mr. Lewis asserts that the 2023 search warrant gives rise to outrageous government conduct. He evinces that the government's actions are "shocking to the universal sense of justice." [R. 82-1 at 10.] The outrageous government conduct defense might arise where the government acts so outrageously that it "shocks the conscience." *Monea v. United States*, 914 F.3d 414, 419 (6th Cir. 2019); *see also United States v. Warwick*, 167 F.3d 965, 974 (6th Cir. 1999) ("this defense looks only at the government's conduct and determines whether it is sufficiently outrageous so as to violate the Constitution."). Outrageous conduct, where applicable, can be a complete defense. *Monea*, 914 F.3d at 419. But the defense "is a bit of a leprechaun, discussed by many courts but

9

rarely—if ever—found." *Id*. In fact, the Sixth Circuit has labeled outrageous police conduct a "novel and wide-ranging theory of due process . . . ." *United States v. Pipes*, 87 F.3d 840, 843 (6th Cir. 1996).

No leprechaun is found here. Even if the Sixth Circuit recognized the "outrageous government conduct" defense, which the Court doubts that it does, hardly anything about the government's conduct can be considered so outrageous as to shock the conscious. Despite its defeat on the first motion to suppress, the government did not veer outside its lane when deciding to seek a new warrant based on independent information. Mr. Lewis is hung up on what he believes was a pre-appeal promise made by the government to dismiss the case if Mr. Lewis's motion to suppress was ultimately successful. [*See* R. 82-1.] But the government *never* made such a promise. Rather, in a joint motion to continue in 2022, the government had averred to an "unlikelihood" that the Government would proceed if Mr. Lewis's motion was granted. [*See* R. 37 at 2.] The government never made any promise that it *would* dismiss the case, it merely alluded to the possibility that it *could* dismiss the case. Deciding to continue prosecuting Mr. Lewis is well within the prosecution's broad discretion.

Nor is the government "continuing to exploit the gains of an illegal search and seizure by crafting a second warrant three years after the fact for the same unlawfully discovered evidence." [*See* R. 82-1.] As thoroughly explained above, the independent source doctrine applies in this case. The government may, therefore, rely on information independent of the 2021 illegal search and seizure to support the factual basis sworn to in the 2023 warrant affidavit. Because the 2023 search and seizure was legal, the government's conduct cannot be "outrageous."

10

## III

The Fourth Amendment affords individuals important protections against governmental invasion of personal liberties. One of those protections is mandating the government to possess probable cause before obtaining a warrant to effectuate a search or seizure. Where probable cause is absent but a warrant still issues, the warrant will be deemed null, and any search or seizure pursuant thereto is illegal. But the Fourth Amendment does not prevent the government from obtaining a new search warrant based upon information gained independently from the illegal search and seizure. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant Edward Lewis's Motion *in Limine* to suppress all evidence obtained pursuant to the 2023 warrant [R. 82] is **DENIED**.

This the 13th of June 2024.

Gregory F. Van Tatenhove
United States District Judge